# EXHIBIT A

# TO DECLARATION OF ANN MARIE PEDERSEN, ESQ.

# IN SUPPORT OF DEFENDANT'S

# MOTION FOR SUMMARY  JUDGMENT

*Electronic Privacy Information Center v. U.S. Department of Education*

**Civil Action No. 1:13-cv-00345-GK**

# epic.org

1718 Connecticut Ave NW

Suite 200

Washington DC 20009

USA

+1 202 483 1140 [tel]

+1 202 483 1248 [fax]

www.epic.org

Sept. 20, 2012

VIA FAX TO: (202) 401-0920

U.S. Department of Education
Office of Management
Regulatory Information Management Services
400 Maryland Avenue, SW, LBJ 2W220
Washington, DC 20202-4536
ATTN: FOIA Public Liaison


Dear FOIA Public Liaison:

This letter constitutes a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted on behalf of the Electronic Privacy Information Center ("EPIC").

EPIC seeks documents related to private debt-collection companies that have contracts with the Department of Education for the collection of federal student loans that have gone into default. Specifically, EPIC seeks the department's manual of procedures that governs these debt collectors, as well as several types of compliance reports (described in detail below) that show whether debt collectors are adequately protecting the privacy of student borrowers.


## Background

The Department of Education relies heavily on private debt collectors to recoup money from borrowers who have defaulted on student loans.[1] As the total amount of outstanding student debt rises, private collection firms view student loans as a burgeoning market and are aggressively seeking contracts with the department.[2] Last year, the department paid about $355 million to private companies to collect on defaulted student loans.[3] The department has contracts with at least twenty-three private debt collectors.[4]

---

[1] Andrew Martin, *Debt Collectors Cashing in On Student Loan Roundup*, N.Y. Times, Sept. 9, 2012, at A1; John Hechinger, *Obama Relies on Debt Collectors Profiting From Student Loan Woe*, Bloomberg (Mar. 26, 2012), http://www.bloomberg.com/news/2012-03-26/obama-relies-on-debt-collectors-profiting-from-student-loan-woe.html.

[2] Mark Russell, *Student Loans: The ARM Industry's New Oil Well?*, InsideArm.com (Oct. 20, 2011), http://www.insidearm.com/daily/debt-collection-news/debt-collection/student-loans-the-arm-industry-s-new-oil-well/.

[3] Andrew Martin, *Debt Collectors Cashing in On Student Loan Roundup*, N.Y. Times, Sept. 9, 2012, at A1.

[4] *Id.*; see also Comparing Collection Agencies, http://www.mystudentloansonline.com/borrowers/myoptions_collectionAgencies (last visited Sept. 20, 2012).

Some of these debt collectors have been accused of abusive or unsavory tactics.[5] Last year, the department received 1,406 complaints about its collection contractors, a 41% increase from the previous year.[6] In particular, the outsourcing of student loan collections raises important concerns about borrowers' privacy. Private debt collectors, which unlike the department are unaccountable to voters, are being entrusted with the sensitive personal and financial data of student borrowers. Under the Privacy Act of 1974, the department may release certain information about student borrowers to collection firms, but those firms must in turn abide by the Privacy Act safeguards.[7]

To instruct debt collectors on federal privacy laws and other important federal requirements, the department publishes a detailed manual, which it distributes to the private collection agencies, or "PCAs," that have contracts with the department.[8] A copy of the 2009 "PCA Procedures Manual" is available on the World Wide Web.[9] But no updated version of the manual is currently publicly available, either on the department's web site or elsewhere. The department set up a web site with information for its collections contractors, but the site has not been updated since 2009.[10]

Collection firms with Department of Education contracts are required to submit various compliance and disclosure reports on a regular basis.[11] At least three such reports deal with privacy issues. First, each collection firm employee working on student loan collections must sign a "Certification of Privacy Act Training" form.[12] This form certifies that the employee has received the proper annual privacy training, and the collection firm must file the form with the department.[13] Second, collection firms are required to submit to the department monthly electronic "Quality Control Reports," which must include a section on privacy and must disclose any problems and corrective actions.[14] Third, firms must submit "Security Awareness and Privacy Act Training Reports," which must state the date of the firm's last privacy training.[15]

---

[5] Andrew Martin, *Debt Collectors Cashing in On Student Loan Roundup*, N.Y. Times, Sept. 9, 2012, at A1; John Hechinger, *Obama Relies on Debt Collectors Profiting From Student Loan Woe*, Bloomberg (Mar. 26, 2012), http://www.bloomberg.com/news/2012-03-26/obama-relies-on-debt-collectors-profiting-from-student-loan-woe.html.

[6] John Hechinger, *Obama Relies on Debt Collectors Profiting From Student Loan Woe*, Bloomberg (Mar. 26, 2012), http://www.bloomberg.com/news/2012-03-26/obama-relies-on-debt-collectors-profiting-from-student-loan-woe.html.

[7] 5 U.S.C. § 552a (2012).

[8] Federal Student Aid Operation Services Processing Division, *PCA Procedures Manual: 2009 ED Collections Contract* (Sept. 2009), *available at* http://www.studentloanborrowerassistance.org/blogs/wp-content/www.studentloanborrowerassistance.org/uploads/2007/03/2009-pca-procedures.pdf.

[9] *Id.*

[10] FSA Private Collection Agencies, http://www.fsacollections.ed.gov/pca/index.html (last visited Sept. 20, 2012).

[11] Federal Student Aid Operation Services Processing Division, *PCA Procedures Manual: 2009 ED Collections Contract* 262-70 (Sept. 2009), *available at* http://www.studentloanborrowerassistance.org/blogs/wp-content/www.studentloanborrowerassistance.org/uploads/2007/03/2009-pca-procedures.pdf.

[12] *Id.* at 262-63, 265.

[13] *Id.*

[14] *Id.* at 267-68.

[15] *Id.* at 270.

All three of these compliance reports are matters of significant public interest, because they represent the primary oversight mechanism for determining whether numerous federal contractors are adequately protecting the privacy of student-loan borrowers.

Documents Requested

EPIC requests copies of the following agency records:

1.  The most currently updated version of the "PCA Procedures Manual" that the Department of Education publishes as guidance for its debt-collection contractors. The 2009 version of this manual was prepared by the Federal Student Aid Operation Services Processing Division.

2.  All "Certification of Privacy Act Training" forms, "Quality Control Reports," and "Security Awareness and Privacy Act Training Reports" submitted by private debt-collection firms to the Department of Education during the last three years.

Request for "News Media" Fee Status

EPIC is a "representative of the news media" for fee waiver purposes.[16] Based on our status as a "news media" requester, we are entitled to receive the requested record with only duplication fees assessed. Further, because disclosure of this information will "contribute significantly to public understanding of the operations and activities of the government,"[17] any duplication fees should be waived.

Thank you for your consideration of this request. As 28 C.F.R. § 16.5(d)(4) provides, I will anticipate your determination on our request within ten calendar days. If you have any questions please contact me at 202-483-1140 x 102 or foia@epic.org.

Respectfully Submitted,

James Romoser
Student
Georgetown University Law Center

Ginger McCall
Director
EPIC Open Government Project

---

[16] EPIC v. Dep't of Def., 241 F. Supp. 2d 5, 14 (D.D.C. 2003).
[17] 5 U.S.C. § 552(a)(4)(A)(iii).

3

# EXHIBIT B

# TO DECLARATION OF ANN MARIE PEDERSEN, ESQ.

# IN SUPPORT OF DEFENDANT'S

# MOTION FOR SUMMARY  JUDGMENT

*Electronic Privacy Information Center v. U.S. Department of Education*

**Civil Action No. 1:13-cv-00345-GK**

# epic.org

13-0005-A

Nov. 1, 2012

VIA FACSIMILE: (202) 401-0920

U.S. Department of Education
Office of Management
Privacy, Information, and Records Management Services
400 Maryland Avenue, SW
Washington, DC 20002-4500
ATTN: Linda Darby, FOIA Public Liaison

1718 Connecticut Ave NW

Suite 200

Washington, DC 20001

USA

+1 202 483 1140 [tel]

+1 202 483 1248 [fax]

www.epic.org

RE: FREEDOM OF INFORMATION ACT REQUEST NO. 12-02019-F

Dear Ms. Darby:

This letter constitutes an appeal under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted to the Department of Education ("the Department") on behalf of the Electronic Privacy Information Center ("EPIC").

On Sept. 20, 2012, EPIC requested documents related to private debt-collection companies that have contracts with the Department for the collection of federal student-loan debt. *See* Appendix 1. EPIC now appeals the Department's failure to respond within the statutory deadlines.

Factual Background

At least twenty-three private companies have contracts with the Department to help recoup debt on defaulted student loans.[1] Last year, the Department paid about $355 million to private debt collectors.[2]

Under the Privacy Act of 1974, when a collection firm is entrusted with sensitive personal and financial data of student borrowers, the firm and it employees must abide by all Privacy Act safeguards.[3] The Department has published a manual that instructs private-collection agencies, or "PCAs," on federal privacy requirements and other important laws and best

---

[1] *See* Contacting Collection Agencies, http://www.myeddebt.com/borrower/myoptions_collectionAgencies (last visited Nov. 8, 2012).
[2] Andrew Martin, *Debt Collectors Cashing In On Student Loan Roundup*, N.Y. Times, Sept. 9, 2012, at A1.
[3] *See* 5 U.S.C. § 552a(m)(1).

1

practices.[4] According to the 2009 version of the manual, collection firms are required to submit various compliance and disclosure reports to the Department on a regular basis.[5] The three types of compliance reports being requested by EPIC all relate, at least in part, to the protection of borrowers' privacy.[6]

Procedural Background

EPIC sent its FOIA request via facsimile around 5:30 p.m. on Sept. 20, 2012. EPIC requested the following documents:

1. The most currently updated version of the Department's "PCA Procedures Manual," which contains detailed guidelines for private debt-collection firms that have contracts with the Department.

2. All "Certification of Privacy Act Training" forms, all "Quality Control Reports," and all "Security Awareness and Privacy Act Training Reports" submitted by private debt-collection firms to the Department during the last three years.

*See* Appendix 1.

EPIC received a transmission verification report confirming that EPIC's fax was received. *See* Appendix 2. On Sept. 27, 2012, the Department responded via e-mail by stating that the Department had received EPIC's request on Sept. 21, 2012 and that the request had been assigned to the appropriate office within the Department. Furthermore, the response granted EPIC a waiver of all fees, including duplication fees. *See* Appendix 3.

The Department's response, however, did not contain any determination of whether the Department would comply with EPIC's request. After the Department's Sept. 27, 2012 e-mail, the Department has had no further communications with EPIC in regard to this FOIA request.

EPIC Appeals the Department's Failure to Issue a Timely Determination

The Freedom of Information Act requires an agency to issue a "determination" about whether it will comply with a request within twenty days, excluding weekends and public holidays.[7] A "determination" must include (1) a list of what records the agency will release and not release, (2) a statement of the reasons for any withholding of records, and (3) a statement notifying the requester of the right to appeal.[8] Under the Department's own FOIA regulations, a

---

[4] *See* Federal Student Aid Operation Services Processing Division, *PCA Procedures Manual: 2009 ED Collections Contract* (Sept. 2009), *available at* http://www.studentloanborrowerassistance.org/blogs/wp-content/www.studentloanborrowerassistance.org/uploads/2007/03/2009-pca-procedures.pdf
[5] *See id.* at 262-70.
[6] *See id.*
[7] 5 U.S.C. § 552(a)(6)(A)(i).
[8] *Id.; see also* Sisseton Indian v. Sec'y of U.S. Air Force, 452 F. Supp. 306, 317 (N.D. Tex. 1978), *rev'd on other grounds*, 613 F.2d 1318 (5th Cir. 1980).

requester may file an appeal for non-responsiveness any time after the twenty-day deadline if "the requester has received no determination" from the Department.[8]

Based on the Department's receipt on Sept. 21, 2012 of EPIC's request, the twenty-day statutory deadline for the Department to issue a determination was Oct. 22, 2012. That deadline has passed with no further response from the Department. Therefore, pursuant to 5 U.S.C. § 552(a)(6)(A)(i) and 34 C.F.R. § 5.46(b), EPIC hereby appeals the Department's failure to issue a timely determination on EPIC's request for documents related to debt collectors.

Conclusion

Thank you in advance for your prompt response to this appeal. As the FOIA provides, I anticipate that you will produce responsive documents within twenty working days. If you have any questions, please feel free to contact me at (202) 483-1140, x. 102, or foia@epic.org.

Sincerely,

James Rolmoser
Student
Georgetown University Law Center

Ginger McCall
Director
EPIC Open Government Project

---

[8] 34 C.F.R. § 5.46(b).

3

# EXHIBIT C

# TO DECLARATION OF ANN MARIE PEDERSEN, ESQ.

# IN SUPPORT OF DEFENDANT'S

# MOTION FOR SUMMARY JUDGMENT

*Electronic Privacy Information Center v. U.S. Department of Education*

**Civil Action No. 1:13-cv-00345-GK**

# UNITED STATES DEPARTMENT OF EDUCATION

OFFICE OF MANAGEMENT

Privacy, Information and Records Management Services

May 1, 2013

Mr. James Romoser
EPIC
1718 Connecticut Ave NW, Suite 200
Washington DC 20009

RE: FOIA Request No. 12-02019-F

Dear Mr. Romoser:

I am writing in reference to EPIC's September 20, 2012 FOIA request (Department FOIA Request No. 12-02019-F). The referenced request sought access to the following Department records:

1. The most currently updated version of the "PCA Procedures Manual" that the Department publishes as guidance for its debt-collection contractors. The 2009 version of this manual was prepared by the Federal Student Aid Operation Services Processing Division.

2. All "Certification of Privacy Act Training" forms, "Quality Control Reports," and "Security Awareness and Privacy Act Training Reports" submitted by private debt-collection firms to the Department of Education during the last three years.

Please find transmitted herewith 1,402 pages of records identified as responsive to the referenced request. We located additional documents responsive to Item 2 of the referenced request today, and will produce them to you as quickly as possible. I apologize for this inconvenience and will contact you shortly to let you know when you may expect to receive these additional documents.

Certain information contained in the documents produced herewith has been redacted and is being denied to you pursuant to FOIA Exemptions 4, 6 and 7(E) (5 U.S.C. §§ 552(b)(4), (6) and (7)(E), respectively). The Department will issue a determination on your FOIA request containing the reasons for denying your request in part and notice of appeal rights when it produces the additional documents referenced above.

Please feel free to contact me at 202-205-0733 if you have questions about this letter.

Sincerely,

Robert Wehausen
FOIA Public Liaison
FOIA Service Center

# EXHIBIT D

# TO DECLARATION OF ANN MARIE PEDERSEN, ESQ.

# IN SUPPORT OF DEFENDANT'S

# MOTION FOR SUMMARY JUDGMENT

*Electronic Privacy Information Center v. U.S. Department of Education*

**Civil Action No. 1:13-cv-00345-GK**



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE OF MANAGEMENT

May 31, 2013

Mr. James Romoser
EPIC
1718 Connecticut Avenue, N.W.
Suite 200
Washington, DC 20009

Re:   FOIA Request No. 12-02019-F

Dear Mr. Romoser:

This constitutes the U.S. Department of Education's (Department's) final determination on EPIC's Freedom of Information Act (FOIA) request dated September 20, 2012.  The referenced request sought access to the following Department records:

1.  The most currently updated version of the "PCA Procedures Manual" that the Department publishes as guidance for its debt-collection contractors.  The 2009 version of this manual was prepared by the Federal Student Aid Operation Services Processing Division.

2.  All "Certification of Privacy Act Training" forms, "Quality Control Reports," and "Security Awareness and Privacy Act Training Reports" submitted by private debt-collection firms to the Department of Education during the last three years.

By letter dated May 1, 2013, the Department transmitted to you 1,402 pages of records identified as responsive to EPIC's request.  At that time, the Department also advised you that it had located additional responsive documents; specifically, the Department has identified 1,430 additional pages of records as responsive to the request.  As discussed below, the Department is denying access to portions of these records – the Quality Control Reports responsive to Item 2 of EPIC's request.  The Department has located no other records responsive to this request.

Certain information contained in the records responsive to EPIC's request has been redacted and is being denied to you pursuant to 5 U.S.C. §§ 552(b)(4), (6) and 7(E) (FOIA Exemptions 4, 6 and 7(E), respectively).  Specifically:

1.  Pursuant to FOIA Exemption 4, the Department has denied access to 2431 pages of records, or portions of pages, responsive to Item 2 of EPIC's request comprising proprietary information submitted to the Department by private contractor debt-collection firms (PCAs), because of the likelihood that disclosure of such information would cause substantial competitive harm to the submitters.

2. Pursuant to FOIA Exemption 6, the Department has denied access to personally identifiable information (PII) concerning individuals contained on 2 pages of records responsive to Item 1 of EPIC's request, because the disclosure of such information would constitute a clearly unwarranted invasion of the referenced individuals' personal privacy.

3. Pursuant to FOIA Exemption 7(E), the Department has denied access to portions of 259 pages of records responsive to Item 1 of EPIC's request comprising information that would disclose guidelines for law enforcement investigations or prosecutions, because the disclosure of such information could reasonably be expected to risk circumvention of the law.[1]

The Department has also redacted information contained on 104 pages previously released that are not responsive to your request (i.e., extraneous notations on the PCA Procedures Manual and reports outside of your request that were inadvertently inserted into the Quality Control Reports).

Information Denied Pursuant to Exemption 4

Exemption 4 protects "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4). This exemption is intended to protect the interests of both the government and submitters of information. See, e.g., Nat'l Parks & Conservation Ass'n v. Morton, 498 F.2d 765, 767-70 (D.C. Cir. 1974). The exemption affords protection, inter alia, to submitters who are required to furnish commercial or financial information to the government by safeguarding them from the competitive disadvantages that could result from disclosure. See Nat'l Parks, 498 F.2d at 768. To be protected under Exemption 4, the information at issue must be commercial or financial, obtained from a person, and privileged or confidential. See, e.g., Pub. Citizen Health Research Group v. FDA, 704 F.2d 1280, 1290 (D.C. Cir. 1983).

Information is considered commercial or financial if it relates to business or trade, or if it pertains, relates to, or deals with commerce. See, e.g., Am. Airlines, Inc. v. Nat'l Mediation Bd., 588 F.2d 863, 870 (2d Cir. 1978); Dow Jones Co. v. FERC, 219 F.R.D. 167, 176 (C.D. Cal. 2002). Some examples of items usually regarded as commercial or financial information include: business sales statistics; research data; technical designs; customer and supplier lists; profit and loss data; overhead and operating costs; and information on financial condition. See, e.g., Landfair v. U.S. Dep't of the Army, 645 F. Supp. 325, 327 (D.D.C. 1986).

The second of FOIA Exemption 4's specific criteria, requiring that the information be "obtained from a person," is easily met in almost all circumstances. The term "person" refers to individuals as well as to a wide range of entities. See, e.g., Nadler v. FDIC, 92 F.3d 93, 95 (2d Cir. 1996) (stating that term "person" includes "an individual, partnership, corporation, association, or public or private organization other than [a federal] agency.").

---

[1] On pages 118, 181, 238, 252, 296, 297, and 300 of the "PCA Procedures Manual," information was mistakenly redacted under FOIA Exemption 3, 5 U.S.C. § 552(b)(3). The Department does not claim that that the information is exempt from disclosure under this exemption. It does, however, deny the same information under FOIA Exemption 7E for the reasons discussed elsewhere herein.

Where the submitter of the information is obliged to furnish commercial or financial information to the government – as it is undisputed the Department's debt-collection contractors were required by Chapters 16 and 17 of the PCA Procedures Manual to submit the information responsive to Item 2 of EPIC's request – commercial matter is privileged and confidential for purposes of Exemption 4 "if disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the [submitter]." National Parks & Conservation Ass'n v. Morton, 498 F.2d 765, 770 (D.C. Cir. 1974).

Pursuant to FOIA Exemption 4, the Department has denied access to: (a) the names of contractor employees contained in Privacy Act training certifications and Security Awareness and Privacy Act Training Reports; and (b) information in Quality Control Reports submitted by Private Collection Agencies (PCAs) reflecting their strategies to maximize contract performance for clients including, but not limited to, the Department.

Pursuant to Exemption 4, the Department has denied access to the names of contractor employees and categories of data selected and used by the PCAs to measure and demonstrate contract performance, referenced on 2431 pages of records responsive to Item 2 of EPIC's request, because public disclosure of this information would be likely to cause substantial harm to the PCAs' competitive positions. Specifically, the PCAs invest substantial time and resources in training and monitoring the performance of their employees to ensure the high quality of the services they provide to clients, including but not limited to the Department. Public identification of the PCAs' most valuable assets – the names of their seasoned employees – would be likely to expose these firms to substantial financial harm as the result of mass "raids" by employment services firms and/or competitors, jeopardizing their ability to perform for current clients and to compete for new business in a highly competitive environment. Further, disclosure of the methods a PCA has selected to measure and demonstrate the caliber of its contract performance would compromise the firm's ability to compete against other PCAs for performance-based awards and bonuses, to the detriment of their market positions.

## Information Denied Pursuant to Exemption 6

Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The Supreme Court has held that the phrase "similar files" should be interpreted broadly to include information "about an individual" regardless of whether the information was kept in "personnel" or "medical" files. United States Dep't of State v. Washington Post Co., 456 U.S. 595, 600-02 (1982) ("[I]nformation about an individual should not lose the protection of Exemption 6 merely because it is stored by an agency in records other than 'personnel' or 'medical' files.").

Determining whether given information is exempt from disclosure under Exemption 6 requires a two-step analysis focusing on: (1) the identification of privacy interests implicated in the information; and (2) where such a privacy interest is identified, the balancing of that interest against the public interest, if any, to be served by disclosure. See Albuquerque Publishing Co. v. Dep't of Justice, 726 F. Supp. 851, 855 (D.D.C. 1989). The requester bears the burden of

establishing that disclosure would serve the public interest. See Larson v. Central Intelligence Agency, 843 F.2d 1481, 1483 (D.C. Cir. 1988). For purposes of this analysis, the public interest to be considered is limited to FOIA's core purpose of shedding light on the activities of a government agency in the performance of its statutory duties. See DOJ v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 773 (1989). The Supreme Court has explained that "the FOIA's central purpose is to ensure that the Government's activities be opened to the sharp eye of public scrutiny, not that information about private citizens that happens to be in the warehouse of the Government be so disclosed." Id. at 774 (emphasis in original).

Pursuant to Exemption 6, the Department has denied access to the names and social security numbers of individual student loan recipients contained on two pages of the records responsive to Item 1 of EPIC's FOIA request. Applying the balancing test outlined above, the Department is withholding information that would identify the referenced individuals, because the privacy interest in this information outweighs any public interest in its release. Generally, privacy interests cognizable under FOIA are found to exist in information such as a person's name, address, phone number, date of birth, criminal history, medical history, financial information, and social security number. See, e.g., Associated Press v. DOJ, 549 F.3d 62, 65 (2d Cir. 2008) ("Personal information, including a person's name, address, and criminal history, has been found to implicate a privacy interest cognizable under the FOIA exemptions."); Seized Prop. Recovery Corp. v. U.S. Customs and Border Prot., 502 F. Supp. 50, 58 (D.D.C. 2007) (finding individuals have a privacy interest in the nondisclosure of their names and addresses when release "would automatically associate the individuals" with Customs seizures and is linked to financial information). Moreover, no FOIA-cognizable public interest would be served by the disclosure of this information because it reveals nothing about the Department's performance of its statutory duties. See SafeCard Services, 926 at 1205 (identity of persons appearing in law enforcement files would almost never be "very probative of any agency's behavior or performance").

Information Denied Pursuant to Exemption 7(E)

Exemption 7(E) protects "guidelines for law enforcement investigations or prosecutions if [their] disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The courts have applied Exemption 7 to protect information related to civil law enforcement activities as well as to criminal matters. See, e.g., Jefferson v. DOJ, 284 F.3d 172, 178 (D.C. Cir. 2002); Rugiero v. DOJ, 257 F.3d 534, 550 (6th Cir. 2001). Further, Exemption 7(E) provides protection for various types of law enforcement materials, including law enforcement manuals and settlement guidelines, under this exemption. See, e.g., Mayer Brown, LLP v. IRS, 562 F.3d 1190, 1192-93 (D.C. Cir. 2009); Church of Scientology, Int'l v. IRS, 845 F. Supp. 714, 723 (C.D. Cal. 1993).

Title IV of the Higher Education Act of 1965, as amended (the HEA) (20 U.S.C. 1071, et seq.) authorizes the Department's Office of Federal Student Aid (FSA) to perform collection and administrative resolution activities with respect to debts resulting from non-payment of student loans and grant overpayments made under the various Title IV student aid programs, in compliance with other statutes generally governing debt collection activities. See PCA Procedures Manual, Chapter 1. The Department contracts with private collection agencies

FOIA Request No. 12-02019-F
Page 5

(PCAs) for the performance of such collection activities, in accordance with procedural guidance set forth in the PCA Procedures Manual responsive to Item 1 of EPIC's FOIA request. As such, the PCA Procedures Manual was clearly "compiled for law enforcement purposes" within the meaning of Exemption 7, and it comprises a type of guidance for which Exemption 7(E) is available.

Pursuant to Exemption 7(E), the Department has denied access to guidelines for PCA personnel engaged in collection and administrative resolution activities aimed at maximizing recoupment of defaulted student loans (e.g., collection objectives, negotiating tools, settlement strategies, and compromise criteria), contained on 259 pages of the PCA Procedures Manual responsive to Item 1 of EPIC's FOIA request. This information is protected under Exemption 7(E) because its public disclosure could reasonably be expected: (a) to enable student loan borrowers who have defaulted to seek to avoid the legal consequences of defaulting on their contractual obligations to repay the full amount owed to the Government; and (b) to permit potential defaulters to conclude, by conducting a cost-benefit analysis, that the legal risks of defaulting on their obligation to repay student loan debt are outweighed by the possibility of negotiating a compromise settlement.

<u>Notice of Right to Appeal</u>

Since the Department cannot provide all of the information you requested, I am required to advise you of your right to appeal this determination. The appeal procedure is outlined in the Department's FOIA regulation published at 34 C.F.R. Part 5 (<u>see</u> 34 C.F.R. § 5.40). You may initiate an appeal by writing within 30 days of receipt of this letter to:

> Assistant Secretary for Management
> Office of Management
> U.S. Department of Education
> 400 Maryland Avenue, S.W.
> Room 2W311, LBJ
> Washington, DC 20202-4500
> Attn: FOIA Appeals

A copy of this letter and a statement of the circumstances, reasons and arguments supporting disclosure of the requested documents should accompany your appeal.

FOIA Request 12-2019-F
Page 6

Please feel free to contact me at 202-205-0733 if you have any questions about this letter.

Sincerely,

Robert Wehausen
FOIA Public Liaison
FOIA Service Center

Enclosure

cc:     Addy Schmidt (via electronic mail without enclosure)

EXHIBIT E


TO DECLARATION OF ANN MARIE PEDERSEN, ESQ.


IN SUPPORT OF DEFENDANT'S


MOTION FOR SUMMARY  JUDGMENT


*Electronic Privacy Information Center v. U.S. Department of Education*

Civil Action No. 1:13-cv-00345-GK

**UNITED STATES DEPARTMENT OF EDUCATION**

OFFICE OF MANAGEMENT

Regulatory Information Management Services

September 26, 2013

Mr. James Romoser
EPIC
1718 Connecticut Avenue, N.W., Suite 200
Washington, DC  20009

Re:  FOIA Request No. 12-02019-F

Dear Mr. Romoser:

This letter is to advise you that the Department has completed processing the Electronic Privacy Information Center's (EPIC's) above-referenced Freedom of Information Act request.

Please find enclosed CDs containing Bates-stamped copies of the PCA Procedures Manual and the Quality Control Reports produced to EPIC in response to this request, for your use with the Vaughn indices to be filed tomorrow in Electronic Privacy Information Center v. U.S. Department of Education (Civil Action No. 1:13-cv-00345-GK).

You will note that the enclosed CDs include 16 pages of records containing information previously denied to EPIC and produced herewith as a matter of administrative discretion.  Such materials may be found at Bates Nos. 000019-000026 and 000273-000280.  Additionally, you will find 134 pages of Quality Control Reports containing information that was previously denied under Exemptions 6 and 7(C).  These records have been corrected to reflect the Department's assertion of Exemption 4 for this information.

Sincerely,

Robert Wehausen
FOIA Public Liaison
FOIA Service Center

Enclosures

# EXHIBIT F

# TO DECLARATION OF ANN MARIE PEDERSEN, ESQ.

# IN SUPPORT OF DEFENDANT'S

# MOTION FOR SUMMARY  JUDGMENT

*Electronic Privacy Information Center v. U.S. Department of Education*

**Civil Action No. 1:13-cv-00345-GK**

FOIA Request No. 12-02019-F
September 27, 2013
Vaughn Index: PCA Procedures Manual

| Bates No. Ranges | Doc. Date | Subject/Title of Document | Document Author | All Known Recipients | Exemption/Basis for Privilege Asserted |
|---|---|---|---|---|---|
| 000003-000014; 000019; 000022-000025; 000030-000033; 000038-000040 000047-000051; 000056-000057; 000058-000072; 000073-000075; 000076-000084; 000093-000115; 000116-000166; 000192-000232; 000233-000241; 000258-000272; 000294-000297; 000298-000301 | March 20, 2013 | PCA Procedures Manual | Federal Student Aid (FSA) | Private Collection Agencies | Exemption 7(E): Public disclosure of this information would provide student loan borrowers with methods to circumvent the student loan collection process in bad faith. |
| 000003-000014; 000085-000092; 000167-000191 | March 20, 2013 | PCA Procedures Manual | FSA | Private Collection Agencies | Exemption 7(E): Public disclosure of this information would provide defaulted borrowers with information to impede the recouping of the debt. |
| 000003-000014; 000027 000242-000257 | March 20, 2013 | PCA Procedures Manual | FSA | Private Collection Agencies | Exemption 7(E): Public disclosure of this information would expose security features of the student loan payment system which could be subject to tampering. |
| 000003-000014; 000034-000037; 000043-000045; 000286-000292; 000301-000309 | March 20, 2013 | PCA Procedures Manu | FSA | Private Collection Agencies | Exemption 7(E): Public disclosure of this information would risk harm to, and circumvention of, the security protocols of the student loan repayment system. |

# EXHIBIT G

## TO DECLARATION OF ANN MARIE PEDERSEN

## IN SUPPORT OF DEFENDANT'S

## MOTION FOR SUMMARY JUDGMENT

*Electronic Privacy Information Center v. U.S. Department of Education*

**Civil Action No. 1:13-cv-00345-GK**

FOIA Request No. 12-02019-F
September 27, 2013
Vaughn Index – PCA Quality Control Reports

| Bates No. Range | Subject/Title of Document | Document Author | All Known Recipients | Exemption/Basis for Privilege Asserted |
|---|---|---|---|---|
| 000310 – 000375 | Quality Control Reports, July 2010- March 2013 | Account Control Technologies | Federal Student Aid (FSA) | Exemption 4: Public disclosure of commercial and privileged or confidential information obtained from Private Collection Agency (PCA) (i.e. data selected and used by the PCAs to measure and demonstrate contract performance), would be likely to cause substantial competitive harm to the PCA submitter by compromising its ability to compete against other PCAs for performance-based awards and bonuses. |
| 000376- 000411 | Quality Control Reports, April 2010- July 2011 | Coast Professional, Inc. | FSA | Exemption 4: Public disclosure of commercial and privileged or confidential information obtained from Private Collection Agency (PCA) (i.e. data selected and used by the PCAs to measure and demonstrate contract performance), would be likely to cause substantial competitive harm to the PCA submitter by compromising its ability to compete against other PCAs for performance-based awards and bonuses. |

| 000412-000483 | Quality Control Reports, April 2010-March 2013 | Collection Technology, Inc. | FSA | Exemption 4: Public disclosure of commercial and privileged or confidential information obtained from Private Collection Agency (PCA) (i.e. data selected and used by the PCAs to measure and demonstrate contract performance), would be likely to cause substantial competitive harm to the PCA submitter by compromising its ability to compete against other PCAs for performance-based awards and bonuses. |
| 000484-000519 | Quality Control Reports, April 2010-March 2013 | Conserve | FSA | Exemption 4: Public disclosure of commercial and privileged or confidential information obtained from Private Collection Agency (PCA) (i.e. data selected and used by the PCAs to measure and demonstrate contract performance), would be likely to cause substantial competitive harm to the PCA submitter by compromising its ability to compete against other PCAs for performance-based awards and bonuses. |
| 000520-000552 | Quality Control Reports, Not Dated | Delta Management | FSA | Exemption 4: Public disclosure of commercial and privileged or confidential information obtained from Private Collection Agency (PCA) (i.e. data selected and used by the PCAs to measure and demonstrate contract performance), would be likely to cause substantial competitive harm to the PCA submitter by compromising its ability to compete against other PCAs for performance-based awards and bonuses. |

| 000553-000587 | Quality Control Reports, April 2010-March 2013 | Enterprise Recovery Systems, Inc. | FSA | Exemption 4: Public disclosure of commercial and privileged or confidential information obtained from Private Collection Agency (PCA) (i.e. data selected and used by the PCAs to measure and demonstrate contract performance), would be likely to cause substantial competitive harm to the PCA submitter by compromising its ability to compete against other PCAs for performance-based awards and bonuses. |
|---|---|---|---|---|
| 000588-000723 | Quality Control Reports, April 2010-March 2013 | EOS | FSA | Exemption 4: Public disclosure of commercial and privileged or confidential information obtained from Private Collection Agency (PCA) (i.e. data selected and used by the PCAs to measure and demonstrate contract performance), would be likely to cause substantial competitive harm to the PCA submitter by compromising its ability to compete against other PCAs for performance-based awards and bonuses. |
| 000724-000771 | Quality Control Reports, April 2010-June 2012 | Financial Asset Management Systems, Inc. | FSA | Exemption 4: Public disclosure of commercial and privileged or confidential information obtained from Private Collection Agency (PCA) (i.e. data selected and used by the PCAs to measure and demonstrate contract performance), would be likely to cause substantial competitive harm to the PCA submitter by compromising its ability to compete against other PCAs for performance-based awards and bonuses. |

| 000772-000879 | Quality Control Reports, Undated | GC Services | FSA | Exemption 4: Public disclosure of commercial and privileged or confidential information obtained from Private Collection Agency (PCA) (i.e. data selected and used by the PCAs to measure and demonstrate contract performance), would be likely to cause substantial competitive harm to the PCA submitter by compromising its ability to compete against other PCAs for performance-based awards and bonuses. |
| 000880-000934 | Quality Control Reports, Undated | Immediate Credit Recovery, Inc. | FSA | Exemption 4: Public disclosure of commercial and privileged or confidential information obtained from Private Collection Agency (PCA) (i.e. data selected and used by the PCAs to measure and demonstrate contract performance), would be likely to cause substantial competitive harm to the PCA submitter by compromising its ability to compete against other PCAs for performance-based awards and bonuses. |
| 000935-001015 | Quality Control Reports, Undated | IQor | FSA | Exemption 4: Public disclosure of commercial and privileged or confidential information obtained from Private Collection Agency (PCA) (i.e. data selected and used by the PCAs to measure and demonstrate contract performance), would be likely to cause substantial competitive harm to the PCA submitter by compromising its ability to compete against other PCAs for performance-based awards and bonuses |

| 001016-001051 | Quality Control Reports, Undated | National Recoveries | FSA | Exemption 4: Public disclosure of commercial and privileged or confidential information obtained from Private Collection Agency (PCA) (i.e. data selected and used by the PCAs to measure and demonstrate contract performance), would be likely to cause substantial competitive harm to the PCA submitter by compromising its ability to compete against other PCAs for performance-based awards and bonuses. |
| 001052-001159 | Quality Control Reports, Undated | NCO | FSA | Exemption 4: Public disclosure of commercial and privileged or confidential information obtained from Private Collection Agency (PCA) (i.e. data selected and used by the PCAs to measure and demonstrate contract performance), would be likely to cause substantial competitive harm to the PCA submitter by compromising its ability to compete against other PCAs for performance-based awards and bonuses. |
| 001160-001195 | Quality Control Reports, Undated | Performant | FSA | Exemption 4: Public disclosure of commercial and privileged or confidential information obtained from Private Collection Agency (PCA) (i.e. data selected and used by the PCAs to measure and demonstrate contract performance), would be likely to cause substantial competitive harm to the PCA submitter by compromising its ability to compete against other PCAs for performance-based awards and bonuses. |

| 001196-001289 | Quality Control Reports, Undated | Pioneer | FSA | Exemption 4: Public disclosure of commercial and privileged or confidential information obtained from Private Collection Agency (PCA) (i.e. data selected and used by the PCAs to measure and demonstrate contract performance), would be likely to cause substantial competitive harm to the PCA submitter by compromising its ability to compete against other PCAs for performance-based awards and bonuses. |
|---|---|---|---|---|
| 001290-001516 | Quality Control Reports, Undated | Premier Credit | FSA | Exemption 4: Public disclosure of commercial and privileged or confidential information obtained from Private Collection Agency (PCA) (i.e. data selected and used by the PCAs to measure and demonstrate contract performance), would be likely to cause substantial competitive harm to the PCA submitter by compromising its ability to compete against other PCAs for performance-based awards and bonuses. |
| 001517-001552 | Quality Control Reports, Undated | Progressive Financial Services | FSA | Exemption 4: Public disclosure of commercial and privileged or confidential information obtained from Private Collection Agency (PCA) (i.e. data selected and used by the PCAs to measure and demonstrate contract performance), would be likely to cause substantial competitive harm to the PCA submitter by compromising its ability to compete against other PCAs for performance-based awards and bonuses. |

| | | | |
|---|---|---|---|
| 001553-001588 | Quality Control Reports, April 2010-March 2013 | The CBE Group | FSA | Exemption 4: Public disclosure of commercial and privileged or confidential information obtained from Private Collection Agency (PCA) (i.e. data selected and used by the PCAs to measure and demonstrate contract performance), would be likely to cause substantial competitive harm to the PCA submitter by compromising its ability to compete against other PCAs for performance-based awards and bonuses. |
| 001589-001664 | Quality Control Reports, Undated | Van Ru Credit Corporation | FSA | Exemption 4: Public disclosure of commercial and privileged or confidential information obtained from Private Collection Agency (PCA) (i.e. data selected and used by the PCAs to measure and demonstrate contract performance), would be likely to cause substantial competitive harm to the PCA submitter by compromising its ability to compete against other PCAs for performance-based awards and bonuses. |
| 001665-001702 | Quality Control Reports, Undated | West Asset Management | FSA | Exemption 4: Public disclosure of commercial and privileged or confidential information obtained from Private Collection Agency (PCA) (i.e. data selected and used by the PCAs to measure and demonstrate contract performance), would be likely to cause substantial competitive harm to the PCA submitter by compromising its ability to compete against other PCAs for performance-based awards and bonuses. |

| 001703-001739 | Quality Control Reports, April 2010-March 2013 | Windham Professionals, Inc. | FSA | Exemption 4: Public disclosure of commercial and privileged or confidential information obtained from Private Collection Agency (PCA) (i.e. data selected and used by the PCAs to measure and demonstrate contract performance), would be likely to cause substantial competitive harm to the PCA submitter by compromising its ability to compete against other PCAs for performance-based awards and bonuses. |
|---|---|---|---|---|